IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SAFECO INSURANCE
COMPANY OF AMERICA,

                Plaintiff,

v.                              //    CIVIL ACTION NO. 1:13CV226
                                      (Judge Keeley)

ROBERT DESANTIS
and DIXIE DESANTIS,

                Defendants.

and

ROBERT DESANTIS
and DIXIE DESANTIS,

                Plaintiffs,

v.                              //    CIVIL ACTION NO. 1:13CV245
                                      (Judge Keeley)

SAFECO INSURANCE
COMPANY OF AMERICA,

                Defendant.


MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT [CASE NO. 1:13CV226, DKT. NO. 6]
     [CASE NO. 1:13CV245, DKT. NO. 16] AND DENYING
THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT
        [CASE NO. 1:13CV245, DKT. NO. 10]

_____

     Pending before the Court are two actions related to the same
homeowner's insurance policy (the "Homeowners Policy").  The
insureds, Robert and Dixie DeSantis (collectively, the
"DeSantises"), allege breach of contract and bad faith arising from
a coverage dispute under the Homeowners Policy.  The insurer,

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

Safeco Insurance Company ("Safeco"), seeks a declaration that it owes no duty to defend or indemnify the DeSantises. The parties have filed cross-motions for summary judgment on the questions of coverage and Safeco's duty to defend under the Homeowners Policy. For the following reasons, the Court **GRANTS** Safeco's motions, and **DENIES** the DeSantises' motion.

## I. BACKGROUND

In 1987, the DeSantises purchased a home located at 1193 Milton Street, Morgantown, West Virginia (the "Residence"), where they lived for approximately twenty-five years. Safeco insured the Residence under the Homeowners Policy with an effective coverage period of June 6, 2011 to June 6, 2012.

The Homeowners Policy obligated Safeco to pay up to the policy limits and provide a defense "[i]f a claim is made or a suit is brought against any *insured* for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies." (Case No. 1:13CV226, Dkt. No. 1-1 at 19). Under the Homeowners Policy, "occurrence" means "an accident, including exposure to conditions which results in: **(1)** *bodily injury*; or **(2)** *property damage*; during the policy period." Id. at 29. However,

2

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

"[r]epeated or continuous exposure to the same general conditions is considered to be one ***occurrence***." <u>Id.</u> Under the Homeowners Policy, "property damage" means "physical damage to or destruction of tangible property, including loss of use of this property." <u>Id.</u> at 25. "Bodily injury" means "bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom." <u>Id.</u> at 23.

In 2012, the DeSantises hired J.R. Hall & Associates, Inc. ("Hall") to list the Residence for sale. The listing described several pertinent details of the Residence, including a concrete block foundation. On February 2, 2012, the DeSantises, with the assistance of Hall, completed a property disclosure statement in which they represented that:

- they were unaware of any past, present, or potential water or sewage problems;

- they were unaware of any substandard material used in construction which is causing water problems or repairs;

- the minor erosion on the pool deck was stabilized and had not moved in more than five years;

- they were unaware of any other material or immaterial information that should be disclosed; and

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

_____

- they disclosed all material and immaterial latent and visible defects of which they were aware to buyers and potential buyers.

Searching for a home to purchase, Jesse and Cara Halldin (collectively, the "Halldins") visited the Residence on March 25, 2012, in the company of their real estate agent, Robin Hill of ERA Properties, as well as Dixie DeSantis.  As the Halldins later explained, the Residence was full of the DeSantises' personal possessions, which made it difficult to view the floors and walls.  The Halldins, however, did inquire about what material had been used to construct the foundation and were told it was concrete block.

On March 27, 2012, the Halldins signed a contract to purchase the Residence for $212,500.  The contract required the DeSantises to provide the Halldins with a property disclosure statement as a "representation of the condition of the Property, to the knowledge of the SELLER."  Further, the Halldins furnished repair requests to the DeSantises, describing in particular "[o]ld water damage in the basement" and "roof sheathing [that] was separating at the seams."  In response, the DeSantises stated the following: "Not sure what the small discolored area in the basement was from, no old or new

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

leaks known. . . .  The roof is less than 10 years old and has never leaked in 30 years."  In reliance on these representations and others, the Halldins purchased the Residence and took possession of it on May 25, 2012.

Shortly after moving in, the Halldins observed a host of defects, including water stains, leaks, insect infestation, warping of floors and walls, and subsidence of the pool and deck.  Further, they discovered that the foundation of the Residence was constructed of plywood and wood frame, not concrete block as Hall and the DeSantises had represented.

As a consequence of these discoveries, on January 14, 2013, the Halldins sued the DeSantises and Hall in the Circuit Court of Monongalia County, West Virginia.  Their complaint asserted causes of action for fraud (against Hall and the DeSantises), breach of contract (against the DeSantises), breach of duty by a real estate broker (against Hall), and civil conspiracy (against Hall and the DeSantises).  Among other things, their complaint alleged that Hall and the DeSantises "knowingly and intentionally made, adopted, and/or ratified statements and representations [about the defects] that they knew to be false," and "worked in concert to accomplish [selling the Residence] through unlawful means."  On February 20,

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

2013, Hall filed a cross-claim against the DeSantises, seeking contribution and indemnification "[t]o the extent that any fault is found . . . for their pro tanto share."[1]

On February 1, 2013, the DeSantises submitted the Halldin and Hall actions to Safeco with a demand for defense and payment under their Homeowners Policy.  On February 26, 2013, Safeco declined coverage and refused to defend the DeSantises in the actions.  Thereafter, on October 4, 2013, the DeSantises sued Safeco in Monongalia County Circuit Court for alleged breach of contract and bad faith.  Days later, Safeco filed this declaratory judgment action regarding its duty to defend and indemnify the DeSantises, and subsequently also removed the DeSantises' amended complaint.  On November 14, 2013, this Court granted the parties' motions to consolidate the cases and stay discovery regarding the non-declaratory judgment claims.

At this juncture, both parties have filed motions seeking judgment as to the coverage question and Safeco's duty to defend.  They agree that, "if the Court grants [Safeco's] Motion for Summary

---

[1] The underlying state case is scheduled for trial early next year.

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Judgment, such a decision would resolve all claims in this action." (Case No. 1:13CV245, Dkt. No. 9 at 1).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific

**SAFECO INS. CO. V. DESANTIS, ET AL.          1:13CV226, 1:13CV245**

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

facts showing that there is a genuine issue for trial." <u>Anderson</u>,

477 U.S. at 256 (internal quotation marks and citation omitted).

The "mere existence of a scintilla of evidence" favoring the

nonmoving party will not prevent the entry of summary judgment; the

evidence must be such that a rational trier of fact could

reasonably find for the nonmoving party. <u>Id.</u> at 248–52.

### III. LEGAL ANALYSIS

In discussing the issues raised by the parties in their

briefs, the Court first finds it necessary to examine the

definition of "occurrence" under West Virginia law to determine

whether an occurrence has triggered coverage. If it has, the Court

must next determine whether that occurrence caused property damage.

### A.  Occurrence

Liability coverage under the Homeowners Policy is only

triggered when an occurrence causes bodily injury or property

damage to a third party who sues the insured. Logically, then,

coverage necessarily depends on the existence of an occurrence.

The Homeowners Policy's definitions equate an "occurrence" to an

"accident." Thus, liability coverage extends to property damage

and bodily injuries caused by accidents. But because the

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

_____

Homeowners Policy does not define "accident," it is necessary to look to the definition provided by West Virginia law.

In 1997, the West Virginia Supreme Court of Appeals interpreted a commercial general liability ("CGL") policy that provided coverage for "those sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' which is caused by an 'occurrence.'" State Bancorp, Inc. v. United States Fidelity & Guaranty Ins. Co., 483 S.E.2d 228, 234 (W. Va. 1997). In that case, the underlying complaint against the insured alleged the tort of outrage, as well as breach of contract, civil conspiracy, and also violation of state banking laws. Id. Although the CGL policy equated an "occurrence" to an "accident," it did not define the term. Id.

In an effort to craft a definition of "accident," the court appropriated the following from a Washington state case:

> An 'accident' generally means an unusual, unexpected and unforeseen event. . . . An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage. . . . To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual.

Id. (citing Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Grp., 681 P.2d 875, 878 (Wash. Ct. App. 1984)). It explained that

9

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

"the definition of an 'occurrence' does not include actions which are <u>intended</u> by the insured." <u>Id.</u> (emphasis in original). Accordingly, it easily determined that all the allegations were "entirely foreign to the risk insured against in [the CGL policy]." <u>State Bancorp</u>, 483 S.E.2d at 235. Finally, the court concluded that the allegations in the underlying complaint were "not reasonably susceptible of an interpretation that the claims are covered under [the CGL policy]." <u>Id.</u> at 236.

Eight years later, in <u>Columbia Casualty Co. v. Westfield Ins. Co.</u>, 617 S.E.2d 797, 799-801 (W. Va. 2005), West Virginia's highest court was again called upon to interpret the meaning of "accident" vis-a-vis "occurrence" within a CGL policy. In that case, the relevant CGL policy provided coverage to a county commission for an "occurrence," which was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." <u>Id.</u> at 799. After two inmates committed suicide in the county jail, the question arose whether the CGL insurer was liable for a portion of the damages and expenses paid by the co-insurer in defending and settling wrongful death lawsuits brought by the deceased inmates' estates. <u>Id.</u> at 798. In other

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

words, did the suicides constitute "occurrences" within the meaning of the CGL policy?  Id.

The Supreme Court held that they did.  "[I]n determining whether under a liability insurance policy an occurrence was or was not an 'accident' . . . [,] primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue."  Id. at 801.  Applying the rule, the court concluded that, from the county commission's standpoint, the inmates' deaths were accidents and thus occurrences within the meaning of the CGL policy.  Id.

Importantly, in urging that a suicide is an inherently deliberate act, the insurer that had declined coverage relied heavily on State Bancorp's holding, citing, in particular, the court's statement that "[a]n accident is never present when a deliberate act is performed."  Id. at 800.  In Columbia Casualty, however, the court distinguished its holding in State Bancorp as follows:

> [I]t must be remembered that the gravamen of the complaints in the underlying cases is that the suicidal acts were proximately caused by the negligent conduct of the sheriff and commission in breaching their duties in managing the jail.  This allegedly negligent and proximately causative conduct removes the deaths from the ambit of the quoted definition of "accident" from State

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

_____

> Bancorp - because the sheriff's and commission's negligence were (allegedly) "additional unexpected, independent . . . happening[s]" that "produce[d] the damage."

Columbia Casualty, 617 S.E.2d at 801 n.6 (citing State Bancorp, 483 S.E.2d at 234) (emphasis in original).

This explanation emphasized two critical distinctions in the underlying allegations in Columbia Casualty - negligence and causation - that, in the court's view, supported its conclusion that the suicides were accidents and therefore covered under the CGL policy.[2] In the court's view, these allegations differed from those in State Bancorp, which did not include negligence and causation, thereby foreclosing coverage, as well as any duty to defend. Id. at 800-01.

**B.  The Halldins' Complaint**

In this case, the Halldins assert three causes of action against the DeSantises.  First, they allege that the DeSantises

_____

[2] Columbia Casualty also reinforces an important point from State Bancorp, namely, that, "[t]o be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual." 483 S.E.2d at 234 (emphasis added). Nevertheless, the cases suggest that the "means," or causative conduct, is analyzed under the traditional tort rubric of negligent-intentional conduct, while the "result," or alleged harm, is viewed from the perspective of the insured to determine whether it was unforeseen or unexpected.

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

committed fraud when they "knowingly and intentionally made, adopted, and/or ratified statements and representations that they knew to be false." As the West Virginia Supreme Court of Appeals has stated, "[a]ctual fraud is intentional." Stanley v. Sewell Coal Co., 285 S.E.2d 679, 683 (W. Va. 1981) (cited by Heslep v. Americans for African Adoption, Inc., No. 1:11CV56, 2013 WL 937574, *6 (N.D.W. Va., Mar. 11, 2013)).

In their other two causes of action against the DeSantises, the Halldins allege that the DeSantises breached the contract of sale, and engaged in a civil conspiracy. In State Bancorp, the Supreme Court of Appeals expressly rejected the argument that either allegation could amount to an "accident" or "occurrence" within the meaning of a liability policy. 483 S.E.2d at 234-36 (finding that "the breach of contract allegation in the Tymans' complaint is entirely foreign to the risk insured against," and "the tort of civil conspiracy . . . make[s] allegations entirely foreign to the risk insured against").

Further support for Safeco's argument that liability coverage under its Homeowners Policy does not extend to the Halldins' claims against the DeSantises is found in the decision of the West Virginia Supreme Court of Appeals in Aluise v. Nationwide Mut. Fire

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

_____

Ins. Co., 625 S.E.2d 260 (W. Va. 2005). Like the instant case,
Aluise specifically addressed whether a homeowner's policy covered
liability for the claims of a home buyer against the seller arising
from alleged misrepresentations in the property disclosure
statement. Id. at 263-64. The homeowner's policy in Aluise also
covered "damages which the insured is legally obligated to pay due
to an occurrence." Id. at 267. "Occurrence" was defined as
"bodily injury or property damage resulting from an accident,
including continuous or repeated exposure to the same general
conditions." Id.

In Aluise, the court adopted the insurer's argument that the
insured-seller's alleged failure to disclose structural and water
seepage problems in the home was not an occurrence. Id. at 268.

> [W]e now hold that, absent policy language to the
> contrary, a homeowner's policy defining "occurrence" as
> "bodily injury or property damage resulting from an
> accident" does not provide coverage for an insured
> homeowner who is sued by a home buyer for economic losses
> caused because the insured negligently or intentionally
> failed to disclose defects in the home. . . . The [home
> buyer] sought damages for economic losses they sustained
> as a result of the negligent or intentional failure of
> the [insured-seller] to disclose defects in the home at
> the time of the sale. The claims asserted by the Aluises
> simply do not trigger an occurrence as defined under the
> policy. As one court appropriately noted, "[t]o find
> coverage existed in this case would be to find that based
> on an act of sale, a homeowner's insurer becomes a

14

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

> warrantor of the condition of the insured property. This is not the type of coverage which is contemplated by . . . homeowner's policies[.]"

Id. at 269 (quoting Lawyer v. Kountz, 716 So.2d 493, 498 (La. Ct. App. 1998)).

Notably, the holding in Aluise erases the negligent-intentional distinction when the underlying allegations concern a seller's misrepresentations to a buyer. Id. (holding that there is no coverage regardless of whether the insured "negligently or intentionally" failed to disclose defects). Therefore, because the Halldins' complaint against the DeSantises alleges no occurrence, under West Virginia law, the DeSantises have no colorable claim for coverage under the terms of the Homeowners Policy.[3]

Alternatively, coverage for the Halldins' complaint is excluded under Section II.2.a(3) of the Homeowners Policy, which excludes coverage for:

> (3)   liability arising out of any written or oral agreement for the sale or transfer of real

---

[3]   The Homeowners Policy also provides "up to $500 per **occurrence** for **property damage** to property of others caused by any other **insured**." (Case No. 1:13CV226, Dkt. No. 1-1 at 23)(emphasis in original). But even if the DeSantises caused property damage to what would become the Halldins' Residence, coverage under this provision is unavailable because the damage did not flow from an "occurrence."

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

_____

> property, including but not limited to liability for:
>
> (a)  known or unknown property or structural defects;
>
> (b)  known or hidden defects in the plumbing, heating, air conditioning or electrical systems;
>
> (c)  known or unknown soil conditions or drainage problems; or
>
> (d)  concealment or misrepresentation of any known defects.

(Case No. 1:13CV226, Dkt. No. 1-1 at 22).

It goes without saying that, but for the contract of sale for the Residence, the Halldins could not allege fraud, breach of contract, or civil conspiracy against the DeSantises.  Accord Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1327-28 (11th Cir. 2005) (employing a "but for" causation test in the context of a policy exclusion using the phrase "arising out of"); Fed. Ins. Co. v. Tri-State Ins. Co., 157 F.3d 800, 804 (10th Cir. 1998) (explaining that the phrase "arising out of" "requires some causal connection to the injuries suffered, but does not require proximate cause in the legal sense") (emphasis added).  Therefore, any coverage of the Halldins' claims is barred

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

by the coverage exclusion found in Section II.2.a(3) of the
Homeowners Policy.[4]

## C.  Hall's Cross-Claim

In addition to claims against the DeSantises, the Halldins'
complaint includes several claims against Hall, including one for
professional negligence.[5]  Hall, in turn, has filed a cross-claim
against the DeSantises for contribution and indemnification for any
potential liability resulting from the Halldins' claims against it.

---

[4] The West Virginia Supreme Court of Appeals has rejected the
finding of coverage "based on an act of sale" because such a finding
would transform the insurer into "the warrantor of the condition of the
insured property." Aluise, 625 S.E.2d at 269 (internal quotation marks
and citation omitted).  According to the Supreme Court, "[t]his is not
the type of coverage which is contemplated by . . . homeowner's
policies[.]" Id. (internal quotation marks and citation omitted).

[5] In the Halldins' complaint, the cause of action against Hall is
characterized as "breach of duty by real estate broker."  Hall, of
course, was the DeSantises' broker, but nevertheless might be liable in
negligence to the Halldins.  Under West Virginia law, "[a] vendor's real
estate broker may be liable to a purchaser if the broker makes material
misrepresentations with regard to the fitness or habitability of
residential property or fails to disclose defects or conditions in the
property that substantially affect its value or habitability, of which
the broker is aware or reasonably should be aware, but the purchaser is
unaware and would not discover by a reasonably diligent inspection."
Syl. Pt. 1, Teter v. Old Colony Co., 441 S.E.2d 728, 730 (W. Va. 1994).
Although the Halldins allege this duty and its breach, they further
allege that Hall owed them several other duties that West Virginia courts
have not explicitly recognized as existing between a seller's real estate
broker and the buyer.  Indeed, "the question of whether a duty exists is
a question of law for the court to resolve." E. Steel Constructors, Inc.
v. City of Salem, 549 S.E.2d 266, 271 (W. Va. 2001).  This Court,
however, has not been asked to resolve that question in this case.

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

_____

The West Virginia Supreme Court of Appeals has held that the "right of contribution before judgment is derivative in the sense that it may be brought by a joint tortfeasor on any theory of liability that could have been asserted by the injured plaintiff." Syl. Pt. 4, Bd. of Educ. v. Zando, Martin & Milstead, Inc., 390 S.E.2d 796, 799 (W. Va. 1990). Based on this premise, the DeSantises suggest that Hall is "likely seeking contribution and/or indemnification from the DeSantis Defendants for their pro tanto share of liability under a negligence theory." The Court therefore must determine whether Hall's alleged professional negligence caused any property damage.

Aluise acknowledged the virtual unanimity among jurisdictions that "'damages flowing from misrepresentation and/or fraud have no basis [as] property damage.'" 625 S.E.2d at 268 (quoting State Farm Fire & Cas. Co. v. Brewer, 914 F. Supp. 140, 142 (S.D. Miss. 1996)) (alteration in original). Aluise found the Eighth Circuit's decision in St. Paul Fire & Marine Ins. Co. v. Lippincott, 287 F.3d 703 (8th Cir. 2002) to be particularly representative.

In Lippincott, home buyers had sued the sellers for, among other things, negligent misrepresentation. Lippincott, 287 F.3d at 705. Specifically, the buyers alleged that the sellers had

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

─────────────────────────────────────────────────────────────

"negligently concealed structural damage to [the] house" by "patch[ing] a structural crack with spackling, cover[ing] a crack with carpet, and then fill[ing] a room with boxes, making it difficult to discover the cracks." Id. at 704-05. The jury awarded the home buyers $47,900 for repairs and $27,100 for diminution in value. Id. at 705.

The sellers' insurer brought a declaratory judgment action to determine whether the "basic insurance policy" and the "personal umbrella policy" covered the award of damages. Id. The district court granted summary judgment to the insurer. Id. On appeal, the Eighth Circuit affirmed, explaining that the only issue was whether the award of damages was a recovery for "property damage" under the insurance policies. Id. The basic insurance policy defined "property damage" as "damage to someone else's property or its loss or destruction and the loss of its use." Id. The umbrella policy defined it as "damage to 'tangible property or its loss or destruction' and 'the loss of its use.'" Id.

According to the Eight Circuit's application of Missouri law, the $75,000 judgment covered "the intangible losses incurred when the [home buyers] relied to their economic detriment upon the [sellers'] misrepresentations," and was "pecuniary in nature and []

19

---

not property damage within the meaning of the [] insurance policies." Id. at 706.

Here, the Halldins' complaint alleges that, as a real estate agency, Hall should have known of the defects in the Residence and should have known that the DeSantises' representations were false.[6] By failing to properly advise the Halldins in this regard, Hall allegedly breached its duty, resulting in "economic loss in the amount of the full purchase price of the home, financing expenses, moving expenses, repair expenses, legal expenses incurred in the sale, annoyance, and other economic and non-economic damages." Under Aluise, such economic losses fall outside the purview of "property damage" in the context of a liability policy. 625 S.E.2d at 270.

The DeSantises, however, argue that a more recent decision of the West Virginia Supreme Court of Appeals, Cherrington v. Erie Ins. Prop. & Cas. Co., 745 S.E.2d 508 (W. Va. 2013), stands for the proposition that economic losses can be considered property damage in the context of the Homeowners Policy.

---

[6] The Halldins also allege that, under an agency theory, the DeSantises are liable for the negligence of Hall. Again, however, coverage for any derivative liability in negligence is dependent on coverage for Hall's alleged negligence.

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

_____

In <u>Cherrington</u>, a home buyer entered into a contract with a home builder for the construction of her home. <u>Id.</u> at 513. After the home was completed, the buyer discovered numerous defects with the construction of the home, including an uneven concrete floor, a leaking roof, wood components that touched the soil, settlement, and cracks in the walls. <u>Id.</u> After she sued the builder for negligent construction, the builder filed a declaratory judgment action seeking coverage under its CGL policy. <u>Id.</u> at 513-14. Following clear state law precedent, the circuit court granted summary judgment to the builder's insurer after determining that the home buyer had alleged neither an occurrence nor property damage. <u>Id.</u> at 514. On appeal, the West Virginia Supreme Court of Appeals overruled its prior decisions[7] and held that defective workmanship did constitute an "occurrence" under the builder's CGL policy, and the alleged defects in construction were "property damage." 745 S.E.2d at 521-22.

_____

[7] In Syl. Pt. 6, the <u>Cherrington</u> court overruled Syl. Pt. 3, <u>Webster Cnty. Solid Wast Auth. v. Brackenrich & Assocs., Inc.</u>, 617 S.E.2d 851 (2005); Syl. Pt. 2, <u>Corder v. William W. Smith Excavating Co.</u>, 556 S.E.2d 77 (2001); Syl. Pt. 2, <u>Erie Ins. Prop. & Cas. Co. v. Pioneer Home Improvement, Inc.</u>, 526 S.E.2d 28 (1999); and Syl. Pt. 2, <u>McGann v. Hobbs Lumber Co.</u>, 145 S.E.2d 476 (1965).

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

_____

While not disputing that <u>Aluise</u> remains good law, the DeSantises contend that the instant case fits more neatly into the analysis in <u>Cherrington</u>. Their argument, however, is unpersuasive for several reasons. <u>Cherrington</u> interpreted the language of a CGL policy as it applied to construction-related issues; like <u>Aluise</u>, this case involves a homeowner's policy in the context of a real estate transaction involving an existing home. Tellingly, the court in <u>Cherrington</u> never referenced <u>Aluise</u> when it expressly overruled a "trilogy" of cases holding that CGL policies did not provide coverage for defective workmanship. <u>Id.</u> at 521.

Furthermore, <u>Cherrington</u> applied the holding from <u>Columbia Casualty</u> to determine that, from the standpoint of the insured-builder, "the damages incurred by the [buyer] during the construction and completion of her home, or the actions giving rise thereto, were not within the contemplation of the [builder] when it hired the subcontractors alleged to have performed most of the defective work." <u>Cherrington</u>, 745 S.E.2d at 520. Here, the DeSantises are the named insured under the Homeowners Policy. According to the Halldins' allegations against Hall in Count Three of their complaint, the DeSantises transmitted false information about the Residence to Hall, which "owed the Halldins a duty to

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

verify the information given to them by the DeSantis defendants."

Thus, from the DeSantises' perspective, any professional negligence

by Hall was entirely foreseeable.

Finally, in <u>Cherrington</u>, a causal connection existed between

the defective workmanship and the alleged damages.  As the court

explained, such a connection was necessary to sustain a claim of

coverage under the terms of the CGL policy:

> Ms. Cherrington has sustained "property damage" as a
> result of the allegedly defective construction and
> completion of her home.  As either allegedly defective
> work, itself, or as a direct consequence thereof, Ms.
> Cherrington has identified [] defects for which she seeks
> repair and recompense. . . .  Given this extensive list
> of damaged items in her home resulting from the allegedly
> defective construction and completion work, we find that
> Ms. Cherrington has asserted a claim for "'property
> damage' . . . caused by an occurrence'" under [the
> insured-contractor's] CGL policy.

<u>Id.</u> at 522.

Here, no causal connection exists between Hall's allegedly

negligent failure to disclose and any property damage to the

Residence.  Although the Halldins describe water stains, leaks,

insect infestation, warping of floors and walls, and subsidence of

the pool and deck, Hall's negligence certainly did not cause such

property damage.  Therefore, absent a causal connection between the

negligence alleged in the Halldins' complaint and the property

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

damage to the Residence, the DeSantises' reliance on <u>Cherrington</u> is misplaced.

Alternatively, Hall's cross-claim, like the Halldins' complaint, falls under a policy exclusion, specifically, Section II.2.a(2), which excludes from coverage liability "under any contract or agreement."[8] As the DeSantises repeatedly point out, their derivative liability finds its basis in their listing agreement with Hall because, "pursuant to that agreement [] the Hall Defendants became agents of the DeSantis Defendants, and engaged in numerous actions which the [Halldins] later claimed constituted realtor malpractice." (Case No. 1:13CV245, Dkt. No. 11 at 19). Because the listing agreement is "any contract or agreement" within the language of Section II.2.a(2), liability derived from it is excluded from coverage.

### IV. CONCLUSION

In sum, the Court concludes that the Homeowners Policy provides no coverage for the claims presented in either the

---

[8] The two exceptions to this exclusion are written contracts that directly relate to the ownership, maintenance or use of an insured location, as well as written contracts where the liability of others is assumed by the insured prior to an occurrence. Neither exception applies here.

**MEMORANDUM OPINION AND ORDER GRANTING SAFECO'S MOTIONS FOR
PARTIAL SUMMARY JUDGMENT AND DENYING THE DESANTISES' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

Halldins' complaint or Hall's cross-claim. The Halldins' claims do not allege an occurrence, and the professional negligence claim asserted against Hall, for which the DeSantises might incur derivative liability, lacks a causal connection to any alleged property damage. Moreover, the Homeowners Policy's exclusions bar coverage in both instances. "Therefore, [Safeco] has no duty to defend or indemnify these claims." West Virginia Fire & Cas. Co. v. Stanley, 602 S.E.2d 483, 498 (W. Va. 2004). For these reasons, the Court **GRANTS** Safeco's motions for partial summary judgment, and **DENIES** the DeSantises' motion for partial summary judgment.

It is so **ORDERED.**

The Court directs the Clerk to enter a separate judgment order in the above-captioned cases and to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: August 6, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE